IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA; and THE STATE OF MICHIGAN,<br><br>Ex rel. RITA DUBOIS,<br><br>Plaintiffs,<br><br>v.<br><br>VITAS HEALTHCARE CORPORATION MIDWEST<br>26677 West Twelve Mile Road,<br>Southfield, MI 48034<br><br>VITAS INNOVATIVE HOSPICE CARE<br>26261 Evergreen Road, Suite 400<br>Southfield, MI 48076<br><br>VITAS HEALTHCARE CORPORATION<br>100 S. Biscayne Boulevard, Suite 1300<br>Miami, Florida 33131<br><br>COMFORT CARE HOLDINGS CO.<br>255 East 5th Street, #2600<br>Cincinnati, Ohio 45202<br><br>and<br><br>CHEMED CORPORATION<br>2600 Chemed Center<br>255 East Fifth Street<br>Cincinnati, Ohio 45202-4726<br><br>Defendants. | Civil Action No.<br>FILED UNDER SEAL<br><br>PURSUANT TO 31 U.S.C. § 3730(b)(2)<br><u>CLAIM FOR JURY TRIAL</u><br><br>***QUI TAM* COMPLAINT** |

## I. INTRODUCTION

1. This is an action to recover damages and civil penalties on behalf of the United States of America arising from the false or fraudulent claims that Defendants, Chemed Corporation and its subsidiaries (collectively as "Vitas") named above, presented or caused to be presented to the United States in violation of the federal False Claims Act, 31 U.S.C. §§ 3729-32. These claims were fraudulent in that Vitas repeatedly and knowingly billed the Government for services rendered to: a) patients that were referred to Vitas as a result of illegal kickbacks; and b) patients who were ineligible or inappropriate for hospice care.

2. This action is also brought under the respective *qui tam* provisions of the Michigan Medicaid False Claims Act, Mich. Comp. Laws §§ 400.601 *et seq*. The State of Michigan and the United States are sometimes hereafter referred to collectively as "the Government."

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to both 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. § 3730. This Court has supplemental jurisdiction over the state claims alleged herein pursuant to 28 U.S.C. § 1367 and 31 U.S.C. §3732(b), the latter of which specifically confers jurisdiction over claims brought under the laws of any

state for the recovery of funds paid by a State or local government where, as here, the action arises from the same transaction or occurrence as an action brought pursuant to 31 U.S.C. § 3730.

4. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a), which authorizes nationwide service of process, and because Vitas Healthcare Corporation Midwest and Vitas Innovative Hospice Care can be found and have transacted business in the Eastern District of Michigan.

5. Venue is proper pursuant to 31 U.S.C. § 3732(a), in that Vitas Healthcare Corporation Midwest and Vitas Innovative Hospice Care can be found and have transacted business in the Eastern District of Michigan.

6. Relator, Rita DuBois ("DuBois" or "Relator"), has prepared and will provide to the Attorney General of the United States and the United States Attorney for the Eastern District of Michigan a disclosure pursuant to 31 U.S.C. § 3730(b)(2), and its state law analog, of substantially all material evidence and information in her possession related to this Complaint and of which she is the original source. This disclosure supports the validity of the claims presented herein.

### III. PARTIES

7. Relator, Rita DuBois, is a citizen of the United States and a resident of the State of Michigan. Since November 2012, DuBois has worked at Vitas

Healthcare Corporation Midwest as the Director of Market Development in Southeastern Michigan, where she was responsible for sales and marketing programs covering Southeastern Michigan, including the city of Detroit, and nine surrounding counties including Oakland, Macomb, and Wayne Counties. The facts averred herein are based on DuBois' personal observations, the results of her investigation, and documents in her possession.

8. Defendant Chemed Corporation is a Delaware corporation with a principal place of business at 2600 Chemed Center, 255 East Fifth Street, Cincinnati, Ohio 45202-4726. Shares of Chemed Corporation are listed on the New York Stock Exchange.

9. Defendant Comfort Care Holdings Co. is a Nevada corporation with a principal place of business at 255 East 5th Street #2600, Cincinnati, Ohio 45202. It wholly owns subsidiaries that operate Vitas' for-profit hospices across the United States, including Defendant Vitas Healthcare Corporation.

10. Vitas Healthcare Corporation is a Delaware corporation with its principal place of business at 100 S. Biscayne Boulevard, Suite 1300, Miami, Florida 33131. It operates 51 for-profit hospice programs in 18 states, including Michigan, and the District of Columbia.

11. Vitas Healthcare Corporation Midwest is a Delaware corporation with a registered office address at 26677 West Twelve Mile Road, Southfield, MI

4

48034. At all times relevant to this Complaint, Vitas was engaged in the business of providing hospice care to individuals who were Medicare beneficiaries.

12. Vitas Innovative Hospice Care maintains a principal place of business at 26261 Evergreen Road, Suite 400, Southfield, Michigan 48076.

13. The United States provides medical care and services for eligible citizens through federally-funded healthcare programs such as Medicare and Medicaid, acting through the Centers for Medicare & Medicaid Services ("CMS"), which programs are housed within the United States Department of Health and Human Services ("HHS").

14. The State of Michigan funds medical care and services through state-level health care plans, approved by HHS, which administer the Medicaid program and under which medical services and items are paid for by the state government ("State Plans"). The State Plans, in turn, receive funds from the federal government for a statutorily-established share of the total amount expended on medical assistance by the State Plans.

## IV. STATUTORY & REGULATORY BACKGROUND

The False Claims Act

15. The False Claims Act ("FCA"), 31 U.S.C. §§ 3727 *et seq.*, provides that anyone who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval to the United States, or who knowingly

makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim (a "False Claim"), is liable to the United States for a civil penalty between $5,500 to $11,000, plus three times the amount of damages the United States sustains because of each such act of that person.

16. To encourage individuals with knowledge of fraud to come forward, the FCA allows a private person to bring a civil action on behalf of herself and the United States and to share in the recovery under the FCA.

17. The FCA state-law counterparts enacted by Michigan create analogous liability for False Claims, and they also allow a civil action by a private person on behalf of herself and the state.

The Anti-Kickback Statute

18. The Medicare and Medicaid Fraud and Abuse Act (the "Anti-Kickback Statute" or "AKS"), 42 U.S.C. § 1320a-7b, prohibits the offering or paying of any remuneration, directly or indirectly, in cash or in kind, to induce the recipient to purchase or recommend the purchase of any good or service for which payment might be made in whole or in part under any federal healthcare program.

19. As part of the health care legislation enacted by Congress in 2010, the AKS was amended to clarify that "a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of [the FCA]." Patient Protection and Affordable Care Act of 2010, Pub. L. No.

6

111-148 § 6402(f), 124 Stat. 119, 759. Hence, a violation of the AKS is deemed to be a *per se* violation of the FCA.

20. As a healthcare provider who seeks and accepts Medicare / Medicaid reimbursements, Vitas is obligated to be knowledgeable of and to comply with all applicable statutes, regulations and guidelines.

## V. VITAS' USE OF KICKBACKS LED TO THE SUBMISSION OF FALSE OR FRAUDULENT CLAIMS TO THE GOVERNMENT

21. On information and belief, in connection with the submission of claims to Medicare and/or Medicaid, Vitas certified that such claims complied with all relevant laws and regulations, including the AKS. These certifications were knowingly false when made, and Vitas knew that the claims would be ineligible for reimbursement if its violations of the AKS were known to the Government. Some of the violations of the AKS are described below.

22. On information and belief, between June 2012 and August 2013, Vitas knowingly and willfully made monetary contributions to Swan for Life Cancer Foundation ("SFL"), a non-profit foundation founded by Dr. Farid Fata ("Fata"), to induce an ever-increasing stream of patient referrals from Fata.

23. Fata was a Rochester Hills-based medical oncologist. He was arrested on healthcare fraud charges on August 6, 2013 and stands accused of deliberately misdiagnosing patients to order unnecessary tests, improperly administering

7

chemotherapy, and submitting $35 million false and fraudulent Medicare claims. He is currently being held without bail at a federal prison in Milan, Michigan.

24. SFL offered support programs, education workshops, and wellness programs for cancer patients, their families and their friends. On information and belief, no physicians were on the staff of SFL and it did not offer any clinical programs.

25. On information and belief, Vitas sales representatives had approached Fata prior to Spring 2012 to discuss Vitas' hospice care services without success because Fata preferred another hospice care provider. That changed in or around May 2012 when Vitas began a "special deal" with Fata and began to offer "extra services" to SFL.

26. As a result of this special deal, over the next fourteen months Fata became Vitas' largest referral source.

27. Relator first learned about Fata and SFL shortly after she joined Vitas. Over the course of her employment, Relator observed that the usual sales and marketing procedures did not apply to Fata.

28. For example, despite Relator's role as the Director of Market Development overseeing all sales and marketing programs in the Southeastern Michigan region, she soon found that all decision-making involving Fata or SFL were being handled directly by Jeanne Kalvaitis, then the Vice President of

8

Hospice Operations, and Tracy Simmons, then the General Manager of Vitas – Southeastern Michigan.

29. On information and belief, Simmons, and the sales representatives assigned to the Fata account would make sales calls to SFL staff to discuss Vitas' services instead of to Fata. On information and belief, Kalvaitis also visited SFL.

30. Fata was also allowed to circumvent the usual procedures for making referrals. Rather than calling the dedicated office referral telephone line to make referrals, Fata was allowed to contact one particular staff person at Vitas to arrange for all his referrals. This special procedure exempted Fata from responding to many questions that would have been asked during regular intake.

31. Over time, Relator learned of several contributions to SFL in exchange for Fata's patient referrals.

> a. On one such occasion, Relator observed Kalvaitis handling multiple check requests and talking about and signing over checks for Fata and SFL. Kalvaitis discussed checks in the amount of $4000 and $6000. She also stated that Vitas would issue several checks in smaller amounts.
>
> b. On another occasion, Relator heard Kalvaitis tell Simmons that if Fata did not pick up on the referrals of patients to Vitas, then Fata would not receive the checks.

  c. On yet another occasion, Relator observed Kalvaitis became irate after finding out that Fata had referred patients to another hospice provider in Michigan. During a subsequent visit to SFL, when Relator by chance were following the sales representative for training purposes, Relator observed the sales representative ask a SFL staff member why referrals were being made to another hospice care provider. They were told that the referrals were done for political reasons and that the situation would be fixed. When Relator told the sales representative that it was inappropriate to question referrals to other hospice providers, the sales representative told Relator that she was under instruction from Kalvaitis to get an explanation.

  32. During her employment, Relator was repeatedly told by Simmons to keep quiet about what was going on within Vitas.

## VI. VITAS' WILLFUL IGNORANCE OF INAPPROPRIATE HOSPICE CARE FOR PATIENTS LED TO THE SUBMISSION OF FALSE OR FRAUDULENT CLAIMS TO THE GOVERNMENT

  33. Throughout Relator's employment, she has observed that Vitas had a lackadaisical attitude towards patient care.

  34. Over time, Relator learned that Fata provided terrible patient treatment. For example, she learned from Kim Johnson, a registered nurse

10

practitioner, that Fata would administer unnecessary procedures such as chemotherapy to patients who were close to death, and then would immediately refer them to Vitas. In some cases, the patients were so ill that they would perish before Vitas could complete the admission paperwork.

35. Johnson told Relator that some of Fata-referred patients were not hospice appropriate.

36. Johnson told Relator that she could not work with Fata's patients because of his poor patient care. She ultimately resigned from Vitas for this reason.

37. On information and belief, Vitas knew that some of Fata's referred patients were ineligible or inappropriate for hospice care.

38. On information and belief, Vitas nonetheless submitted claims for reimbursement for hospice care services provided to these patients.

## VII. DAMAGES TO THE GOVERNMENT

39. Relator believes and avers that the misconduct described above resulted in the presentation of false or fraudulent claims to the Government both during and prior to Relator's employment with the company, as early as June 2012 when Vitas' relationship with Fata started.

40. Relator is unaware of the precise amount of damage suffered by Medicare, Medicaid, and/or other Government health programs through the false

or fraudulent claims that resulted from kickback-related referrals that were presented to the Government, but believes that they are substantial, and may involve all revenue that Vitas derived from patients referred by Fata.

## COUNT I
## False Claims Act
## (Anti-Kickback Statute)

41. Realtor repeats and restates the allegations contained in Paragraphs 1 through and including 40 of the within Complaint.

42. By its conduct, Vitas knowingly improperly billed Medicare and Medicaid, violated the AKS, and caused false or fraudulent claims to be presented to Medicare and Medicaid in violation of the False Claims Act, 31 U.S.C. §§ 3729-32.

43. The United States approved and paid numerous claims to Vitas that it otherwise would not have paid had it been aware of Vitas' misconduct in providing kickbacks for patient referrals.

44. By reason of these payments, the United States has been damaged and may continue to be damaged in an amount yet to be determined.

WHEREFORE, with respect to COUNT I, Relator Rita DuBois demands judgment in her favor and in favor of the United States against the Defendants, as follows:

(A) Judgment in favor of the United States in an amount equal to three times the damages the United States has sustained because of Defendants' conduct, together with a civil penalty of not less than $5,500 nor more than $11,000 for each violation of the False Claims Act, 31 U. S. C. § 3729.

(B) Judgment in favor of Relator, as a Qui Tam Plaintiff, for a portion of the judgment in favor of the United States pursuant to 31 U.S.C. § 3730(d), and for all costs of this action, including, but not limited to, attorneys' fees, expert fees, and court costs; and,

(C) Judgment in favor of United States and Relator for such other and further relief as the Court deems just and proper.

## COUNT II
## False Claims Act
## (False or Fraudulent Claims)

45. Realtor repeats and restates the allegations contained in Paragraphs 1 through and including 44 of the within Complaint.

46. By its conduct, Vitas knowingly improperly billed Medicare and Medicaid and caused false or fraudulent claims to be presented to Medicare and Medicaid in violation of the False Claims Act, 31 U.S.C. §§ 3729-32.

47. The United States approved and paid numerous claims to Vitas that it otherwise would not have paid had it been aware of that some of the patients were ineligible or inappropriate for hospice care services.

48. By reason of these payments, the United States has been damaged and may continue to be damaged in an amount yet to be determined.

WHEREFORE, with respect to COUNT II, Relator Rita DuBois demands judgment in her favor and in favor of the United States against the Defendants, as follows:

(A) Judgment in favor of the United States in an amount equal to three times the damages the United States has sustained because of Defendants' conduct, together with a civil penalty of not less than $5,500 nor more than $11,000 for each violation of the False Claims Act, 31 U. S. C. § 3729.

(B) Judgment in favor of Relator, as a Qui Tam Plaintiff, for a portion of the judgment in favor of the United States pursuant to 31 U.S.C. § 3730(d), and for all costs of this action, including, but not limited to, attorneys' fees, expert fees, and court costs; and,

(C) Judgment in favor of United States and Relator for such other and further relief as the Court deems just and proper.

## COUNT III
**Michigan False Claims Act**

49. Relator repeats and restates the allegations contained in Paragraphs 1 through and including 48 of the within Complaint.

50. By its conduct, Vitas knowingly presented or caused to be presented false or fraudulent claims to the State of Michigan in violation of Mich. Comp. Laws §§ 400.601 *et seq.*

51. As the direct, proximate, and foreseeable result of its fraud, Vitas caused numerous false or fraudulent claims to be presented to the State of Michigan and paid to Vitas, which claims would not have approved and paid had the State of Michigan been aware of Vitas' false or fraudulent conduct.

52. By reason of these payments, the State of Michigan has been damaged and may continue to be damaged in an amount yet to be determined.

WHEREFORE, with respect to COUNT III, Relator Rita DuBois demands judgment in her favor and in favor of the State of Michigan against the Defendants as follows:

(A) Judgment in favor of the State of Michigan in an amount equal to three times the damages the State of Michigan has sustained because of Defendants' conduct, together with a civil penalty of not less than $5,000 nor more than $10,000 for each violation of Mich. Comp. Laws §§ 400.601 *et seq.*;

(B) Judgment in favor of Relator, as a Qui Tam Plaintiff, for a portion of the judgment in favor of the State of Michigan pursuant to Mich. Comp. Laws §§ 400.610(a), and for all costs of this action, including, but not limited to, attorneys' fees, expert fees, and court costs; and

(C)     Judgment in favor of the State of Michigan and Relator for such other and further relief as the Court deems just and proper.

*RELATOR DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE*

Dated:  November 5, 2013          RITA DUBOIS, Relator,
By her attorney,


By: /s/William D. Gilbride, Jr.
William D. Gilbride, Jr. (P36830)
ABBOTT NICHOLSON PC
300 River Place, Suite 3000
Detroit, Michigan 48207
(313) 566-2500
wdgilbride@abbottnicholson.com


Of Counsel:

Elizabeth K. Ainslie (P35870)
Theresa E. Loscalzo (P52031)
Stephenie W. Yeung (P84415)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
(215) 751-2000
(Admitted in the Commonwealth of Pennsylvania)

4820-0166-6838, v. 1